**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

CASE NO. 4:20-CV-01955

**TASHA JACKSON,** *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

**SOUTH HOUSTON MOTORCARS, LLC d/b/a SOUTH HOUSTON NISSAN**, *a Texas limited liability company*,

    Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Plaintiff, Tasha Jackson, on behalf of herself and a class of similarly situated persons, and with the consent of Defendant South Houston Motorcars, ("Defendant"), respectfully request the entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement," "Agreement," or "Agr."), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

### I.  INTRODUCTION

The Settlement Agreement makes available to each member of the settlement class a settlement of $50.75. Agr. § II.B.1. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation centered on unsettled legal questions.

The Parties' proposed Settlement provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case and unique financial circumstances. Second, the Settlement was reached only after first engaging in discovery, extensive arm's-length negotiations, and confirmatory discovery. Third, the Settlement was not conditioned on any amount

---

[1] The Agreement is attached as **Exhibit A**. All capitalized terms used herein have the same definitions as those defined in the Agreement.

1

of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. For all of these reasons, Plaintiff respectfully request that the Court preliminarily approve the Settlement.

## II. BACKGROUND

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] Defendant initiated a prerecorded message campaign in which prerecorded messages were sent to Plaintiff and approximately 34,482 unique cell phone numbers. Plaintiff alleges that this campaign violated the TCPA because the prerecorded messages were sent to consumers without express written consent. Defendant denies any wrong doing and has made various challenges to class certification and the merits of Plaintiff's claim.

## III. SUMMARY OF THE SETTLEMENT TERMS

### a. The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All persons within the United States who (1) were successfully sent a prerecorded message to their cellphone; (2) promoting Defendant's property, goods,**

---

[2] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

**and/or services; (3) during the four years prior to the filing of the Complaint.**

The Settlement Class excludes the following: (1) the trial judge presiding over this case; (2) Defendant, as well as any parent, subsidiary, affiliate, or control person of Defendant, and the officers, directors, agents, servants, or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); any Settlement Class Member who has timely opted out of this proceeding; and (6) Plaintiff's Counsel, their employees, and their immediate family. The Settlement Agreement makes available to each member of the settlement class a settlement of $50.75. Agr. § II.B.1.

### b. The Notice Program

Pending this Court's approval, Epiq Systems, Inc., will serve as the Notice Administrator, and will be responsible for administrating the Notice Program. The Notice Program consists of five different components: (1) E-Mail Notice; (2) Mailed Notice; (3) Long-Form Notice; (4) a Settlement Website; and (5) a toll-free number. Agr. § III.B. The forms of the proposed notices agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as exhibits.

### i. E-Mail Notice

The primary form of notice shall be E-Mail Notice. Agr. § III.B.3. A copy of the E-Mail Notice is attached to the Settlement Agreement as Exhibit 4. Individuals

who receive E-Mail Notice will have the option of mailing in a Claim Form or visiting the Settlement Website (www.SouthHoustonTCPAsettlement.com) to download and file a Claim Form.

### ii. Mail Notice

The Administrator shall use Mail Notice only for any Settlement Class Members who do not have e-mail addresses or for any Settlement Class Members from whom E-mail Notices were returned as undeliverable. Agr. § III.B.4. For those Settlement Class Members only, the Administrator, by the Class Notice Date, shall by first class U.S. Mail send one copy of the Mail Notice. *Id*.

### iii. Long-Form Notice

E-Mail and Mail Notice will all contain the address for the Settlement Website, www.SouthHoustonTCPAsettlement.com. Agr. § III.B.5. On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the E-Mail Notice. A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit 3.

### iv. Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. Agr. § III.B.6. The Settlement Website will be established by the Class

Notice Date. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Defendant agree to post or that the Court orders be posted on the Settlement Website. The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries. *Id*. § III.B.7.

### c. Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim to their portion of the Settlement Fund. Agr. § III.C. Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 1.

### d. Allocation of the Settlement Fund Payments

Defendant will make available up to $50.75 ($1,750,000) in cash per class member for the benefit of Settlement Class Members (the "Settlement Fund"). Agr. § II.B.1. Each Settlement Class Member who submits a timely, valid, correct and verified Claim Form by the Claim Deadline in the manner required by this Agreement, making all the required affirmations and representations under penalty of perjury, shall be sent a Claim Settlement Check by the Administrator which will

5

be reduced by their prorata share of the costs of administration, any attorney fees and expenses awarded to Class Counsel and any Service Award.

### e. Opt-Out and Objection Procedures and Release

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Agr. §§ III.D. and E. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. Settlement Class Members who wish to file an objection to the Settlement must do so no later than 30 days before the Final Approval Hearing. *Id*. at § I.Y. In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, have agreed to the release as defined in the Agreement. Agr. § V.

### f. Class Counsel Fees and Expenses and Plaintiffs' Service Awards

Defendant has agreed not to oppose Class Counsel's request for attorneys' fees of 25% of the Settlement Fund and expenses of up to $40,000. Agr. § II.E.2. Defendant has also agreed not to oppose an application for a Service Award up to $5,000.00. *Id*. at § II.D.1. The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## II. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Standard for Preliminary Approval

In deciding whether to approve a proposed settlement, the Fifth Circuit has a strong judicial policy that encourages class settlements, especially in complex class actions. *See In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982). At the preliminary approval stage, the Court need only determine whether the proposed settlement appears on its face to be fair and falls within the range of possible judicial approval. *In re OCA, Inc. Sec. & Derivative Litig.,* 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008). There is an initial presumption of fairness when a proposed settlement that has been negotiated at arm's length by experienced counsel is presented to the court for preliminary approval. *Murrillo,* 921 F. Supp. at 445. Here, the Court's only concern is whether the settlement has any "glaring deficiencies" that would make final approval "untenable." *McNamara v. Bre-X Minerals Ltd.,* 214 F.R.D. 424,428 (E.D. Tex. 2002).

Here, given the complexities of this Action and the continued risks if the Parties were to proceed, the Settlement represents a favorable resolution and eliminates the risk that the Settlement Class might recover less or nothing at all.

### B. The Proposed Settlement Meets the Standard for Preliminary Approval

7

In determining whether to preliminarily approve the settlement, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual 4th*, § 21.633. If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *McNamara*, 214 F.R.D. at 430.

The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." *Manual 4th* § 40.42. The opinion of experienced counsel supporting the settlement is entitled to considerable weight. See *Reed*, 703 F.2d at 175 ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). "The court … must not try the case in the settlement hearings because 'the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* at 172 (citation omitted); see also *Shaw v. Toshiba America Information Sys., Inc.*, 91 F. Supp. 2d 942, 959 (E.D. Tex. 2000). "A district court faced with a proposed settlement must compare its terms

with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.

### a. There are no Grounds to Doubt the Fairness of the Settlement, Which is the Product of Extensive, Arm's-Length Negotiations.

The first consideration in the analysis is whether "'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations.'" *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). Courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. See *Reed*, 703 F.2d at 175; *McNamara*, 214 F.R.D. at 430-31 ("Counsel on all sides have proved to the Court their knowledge of the facts and law relevant to this case. Settlement was reached by knowledgeable counsel, and it was arrived at after much negotiation as is evidenced by the time it took the parties to reach an agreement."). When a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable.

Here, the proposed settlement is the product of extensive, arm's length negotiations that included a mediation session before mediator Judge Susan Soussan, and numerous telephonic sessions between the parties after the initial mediation. Counsel for the parties had numerous phone calls, and multiple email exchanges. The negotiations were informed by multiple depositions and reviewing documents obtained from Defendant and third parties. Based on their familiarity with the factual

9

and legal issues, the parties were able to negotiate a fair settlement that took into account the costs and risks of continued litigation.

In reaching the proposed settlement, all legal and factual issues were evaluated, and all alternatives were considered. The negotiations were at all times hard-fought and arm's-length, and have produced a result that the parties believe to be in their respective best interests. Furthermore, the proposed Settlement provides no preferential treatment for the named Plaintiff. Those receiving releases of their contested claims will receive those releases in levels equal to all other Settlement Class Members. If the Court grants final approval and the proposed settlement becomes binding on all Settlement Class Members, the claims against the Released Parties will be released and dismissed.

### b. The Complexity, Expense, and Likely Duration of the Litigation

This consideration weighs heavily in favor of approving the settlement. Plaintiff's claims, although straightforward, were premised on unsettled legal theories. Additional depositions and extensive discovery would have to be undertaken along with considerable motion practice, all involving considerable expense. Further, the Parties would likely have to involve experts to help determine whether prerecorded messages received by Plaintiff and members of the Class are covered by the TCPA. The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private

resources, and, given the relatively small value of the claims of the individual class members, would be impracticable.

### c. The Settlement Falls Within the Range of Possible Approval

The Settlement Fund made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for class certification, Defendant's assertion of various legal challenges, a motion for summary judgment, trial as well as appellate review following a final judgment. The Settlement also provides for non-monetary relief in the form of changed practices. There can be no doubt that this Settlement is a fair and reasonable recovery in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiffs and all Settlement Class members would face absent a settlement.

The proposed plan of settlement for purposes of preliminary approval is also undoubtedly fair. At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001). The proposed Settlement falls within the range of possible final approval, and the Court should therefore grant

preliminary approval of the Settlement and direct that notice be given to the Settlement Class.

### C. The Proposed Notice Plan Satisfies Rule 23 and Due Process

Notice of a proposed settlement must be given to class members in the most practicable manner under the circumstances, describing the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *See* 23(c)(2)(B). The proposed Class Notice more than satisfies this standard.

The Notice program satisfies all of these criteria. Agr. § III.B. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for a Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

### D. The Proposed Settlement Class Meets the Prerequisites for Class Certification under Rule 23

Rule 23(a) sets forth four prerequisites to class certification applicable to all class actions, including classes for the purpose of settlement: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, the class must meet one of the three requirements of Rule 23(b). FED. R. CIV. P. 23.

### a. Numerosity

Rule 23(a)(l) requires that the class be so numerous that joinder of all class members is "impracticable." FED. R. CIV. P. 23(a)(l)." The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 34,482 unique cell phone numbers (Agr. § I.II), and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1);

### b. Commonality

The Rule 23(a)(2) requirement is satisfied where, as here, there exist "questions of fact and law which are common to the class." FED. R. Crv. P. 23(a)(2). "The interests and claims of the various plaintiff's need not be identical." *Forbush v. JC. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). Here, there are multiple questions of law and fact – centering on Defendant's prerecorded messages – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

### c. <u>Typicality</u>

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class and seeks to ensure that the interests of the named plaintiff align with those of the class she purports to represent. FED. R. CRV. P. 23(a)(3). No complete identity of claims is required. Typicality is readily established here. Plaintiff is typical of absent Settlement Class members because she received the subject prerecorded message and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

### d. <u>Adequacy</u>

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "To meet the adequacy-of-representation requirement of Rule 23(a)(4), Courts consider (1) whether the named representative shares common interest with other class members, and (2) whether the named representative will vigorously prosecute the interests of the class through the class counsel." *Schwartz v. TXU Corp.,* 2005 WL 3148350, *14 (N.D. Tex., Nov. 8, 2005).

Class Counsel is qualified, experienced, and thoroughly familiar with complex class actions. Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent

Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

With respect to the Class Representatives, the "adequacy" requirement asks only whether the representative's interests are comparable to those of the absent class members or conflict with those of the class. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1056 (S.D. Tex. 2012).

### e. Common Issues Predominate

To satisfy this requirement, common questions merely need to "predominate" - they do not need to be exclusive or dispositive. As courts in the Fifth Circuit have determined, "the mere existence of individual questions of reliance is not sufficient to warrant a ruling that common questions of law of fact do not predominate." *Ramsey v. Arata,* 406 F. Supp. 435, 441 (N.D. Tex. 1975). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members

substantially outweigh any possible issues that are individual to each Settlement Class member.

### f. A Class Action is the Superior Method to Adjudicate These Claims

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Lease Oil Antitrust Litig. (No. II),* 186 F.R.D. 403,428 (S.D. Tex. 1999). The superiority inquiry generally considers four factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

The remaining three superiority factors indicate that the class action is the best vehicle for conducting this litigation. Since the cost of complex consumer litigation against a company is extremely high and the individual returns comparatively low, the class action is the most feasible manner of bringing Plaintiff's claims. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for

any individual to bring a solo action prosecuting his or her rights." *Amchem,* 521 U.S. at 617 (internal citation omitted).

### E. Plaintiff's Counsel should be Appointed Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Here, proposed Class Counsel have significant experience in litigating class actions and TCPA cases and have diligently litigated this action, dedicated substantial resources to the investigation and prosecution of these claims, and demonstrated their knowledge of the law at issue. Therefore, the Court should appoint Scott A. Edelsberg of f Law, P.A.; Andrew J. Shamis and Angelica M. Gentile of Shamis & Gentile P.A; Ignacio J. Hiraldo of IJH Law; Michael Eisenband of Eisenband Law, P.A.; and Manuel S. Hiraldo of Hiraldo, P.A. — as Class Counsel in this pursuant to Rule 23(g).

### F. Proposed Schedule of Events

| Event | Timeline |
|---|---|
| Deadline for Completion of Notice | Sixty days after entry of the Preliminary Approval Order |
| Deadline for filing Motion for Final Approval of the Settlement and Class Counsel's Fee Application and expenses, and for Service Award | Forty-five days before the Final Approval Hearing |
| Deadline for opting-out of the Settlement and for submission of Objections | Thirty days before the Final Approval Hearing |
| Deadline for Responses to Objections | Fifteen days before the Final Approval Hearing |
| Final Approval Hearing | TBD |
| Last day Class Claimants may submit a Claim Form | Ten days after the Final Approval Hearing |

## G. Conclusion

Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval; (2) certify the Settlement Class; (3) appoint Plaintiff as Class Representative; (4) approve the Notices in substantially the form as those attached; (5) approve the opt-out and objection procedures; (6) stay the Action pending Final Approval; (7) appoint the firms listed in the signature blocks below as Class Counsel; and (8)

schedule a Final Approval Hearing. Attached as **Exhibit B** is a proposed order for the Court's consideration.

Dated: April 21, 2021

| | |
|---|---|
| **SHAMIS & GENTILE, P.A.**<br>By: */s/ Andrew Shamis*<br>Andrew Shamis, Esq.<br>Florida Bar # 101754<br>Email: ashamis@shamisgentile.com<br>14 NE 1st Ave., Suite 705<br>Miami, FL 33132<br>Telephone (305) 479-2299<br>Facsimile (786) 623-0915 | **EDELSBERG LAW, PA**<br>Scott Edelsberg, Esq. *(pro hac vice forthcoming)*<br>Florida Bar No. 0100537<br>scott@edelsberglaw.com<br>20900 NE 30th Ave, Suite 417<br>Aventura, FL 33180<br>Telephone: 305-975-3320 |
| **EISENBAND LAW, P.A.**<br>515 E. Las Olas Boulevard, Suite 120<br>Ft. Lauderdale, Florida 33301<br>Michael Eisenband *(pro hac vice)*<br>Florida Bar No. 94235<br>Email: MEisenband@Eisenbandlaw.com<br>Telephone: 954.533.4092 | **HIRALDO P.A.**<br>Manuel S. Hiraldo *(pro hac vice)*<br>Florida Bar No. 030380<br>Email: mhiraldo@hiraldolaw.com<br>401 E. Las Olas Boulevard, Suite 1400<br>Ft. Lauderdale, Florida 33301<br>Telephone: 954.400.4713 |
| **IJH LAW**<br>Ignacio J. Hiraldo *(pro hac vice)*<br>Florida Bar No. 0056031<br>14 NE First Ave. 10th Floor  Miami, FL 33132<br>Email: ijhiraldo@ijhlaw.com<br>Telephone: 786.351.8709 | |