## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

CASE NO. 4:20-CV-01955

**TASHA JACKSON,** *individually and on*
*behalf of all others similarly situated*,

      Plaintiff,

v.

**SOUTH HOUSTON MOTORCARS, LLC**
**d/b/a SOUTH HOUSTON NISSAN**,
*a Texas limited liability company*,

      Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## <u>UNOPPOSED MOTION FOR FINAL APPROVAL</u>

Plaintiff, Tasha Jackson, on behalf of herself and a class of similarly situated persons, and with the consent of Defendant, respectfully request the entry of an order granting final approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement," "Agreement," or "Agr.").[1]

## I.    INTRODUCTION

Plaintiff initiated this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that Defendant initiated a prerecorded message campaign whereby prerecorded messages using "ringless" voicemail technology were sent to Plaintiff and approximately 34,482 other individuals. The parties negotiated a settlement on behalf of plaintiff and the class. On April 27, 2021, the Court granted Preliminary Approval, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and reimbursement of attorneys' fees for Class Counsel.

## II.    MOTION FOR FINAL APPROVAL

The following is a summary of the material terms of the Settlement.

### a.    The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All persons within the United States who (1) were successfully sent a prerecorded message to their**

---

[1] The Agreement is attached as **Exhibit A**. All capitalized terms used herein have the same definitions as those defined in the Agreement.

> **cellphone; (2) promoting Defendant's property, goods, and/or services; (3) during the four years prior to the filing of the Complaint.**

The Settlement Class excludes the following: (1) the trial judge presiding over this case; (2) Defendant, as well as any parent, subsidiary, affiliate, or control person of Defendant, and the officers, directors, agents, servants, or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); any Settlement Class Member who has timely opted out of this proceeding; and (6) Plaintiff's Counsel, their employees, and their immediate family.

### b.  Settlement Consideration

The Settlement Agreement makes available to each member of the settlement class a settlement of $50.75. Agr. § II.B.1.

### c.  The Notice Program

Epiq Systems, Inc., ("Epiq") served as the Notice Administrator, and was responsible for administrating the Notice Program. The Notice Program consisted of five different components: (1) E-Mail Notice; (2) Mailed Notice; (3) Long-Form Notice; (4) a Settlement Website; and (5) a toll-free number. Agr. § III.B. *See* Declaration from Epiq Regarding Summary of Notice Program attached as **Exhibit A**.

### d.  Class Counsel Fees and Expenses and Plaintiffs' Service Awards

Defendant has agreed not to oppose Class Counsel's request for attorneys' fees of 25% of the Settlement Fund and expenses of up to $40,000. Agr. § II.E.2. Defendant has also agreed not to oppose an application for a Service Award up to $5,000.00. *Id.* at § II.D.1. The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## II.   THE SETTLEMENT WARRANTS FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), the Court must approve any settlement that would result in dismissal of a class action. The Fifth Circuit has consistently held that settlements are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). "[T]here is a strong presumption in favor of finding the Settlement Agreement fair. The proposed settlement is not required to 'achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation.' Rather, compromise is the essence of settlement . . . ." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007). Thus, a court "generally will consider the facts of a settlement in a light favorable to promoting settlements." *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 648 (N.D. Tex. 1977).

Once satisfied that counsel adequately represented the class and has bargained for the proposed settlement in good faith, the "only question" for the Court "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary*, 76 F.R.D. at 649. Courts in the Fifth Circuit consider the following six factors in determining whether to approve a proposed settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. Reed v. Gen. Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012). The Settlement here is fair when analyzed under each factor.

### a. There Was and Is No Fraud or Collusion in Connection with the Settlement

Courts presume that settlement negotiations are free from fraud and collusion, unless affirmative evidence indicates otherwise. *DeHoyos*, 240 F.R.D. at 287; *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *19 (N.D. Tex. Dec. 11, 2003) (rejecting claim of fraud or collusion because objector pointed to no evidence in record supporting her claim). Here, the proposed settlement is the product of extensive, arm's length negotiations that

included a mediation session before mediator Judge Susan Soussan, and numerous telephonic sessions between the parties after the initial mediation. Counsel for the parties had numerous phone calls, and multiple email exchanges. The negotiations were informed by multiple depositions and reviewing documents obtained from Defendant and third parties. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement that took into account the costs and risks of continued litigation.

In reaching the proposed settlement, all legal and factual issues were evaluated, and all alternatives were considered. The negotiations were at all times hard-fought and arm's-length and have produced a result that the parties believe to be in their respective best interests. Furthermore, the proposed Settlement provides no preferential treatment for the named Plaintiff. Those receiving releases of their contested claims will receive those releases in levels equal to all other Settlement Class Members. If the Court grants final approval and the proposed settlement becomes binding on all Settlement Class Members, the claims against the Released Parties will be released and dismissed.

### b. The Complexity, Expense, and Likely Duration of this Litigation Supports the Settlement

This consideration weighs heavily in favor of approving the settlement. Plaintiff's claims, although straightforward, were premised on unsettled legal theories. Additional depositions and extensive discovery would have to be

undertaken along with considerable motion practice, all involving considerable expense. Further, the Parties would likely have to involve experts to help determine whether prerecorded messages received by Plaintiff and members of the Class are covered by the TCPA. The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable.   Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. In sum, the Settlement allowed the parties to avoid time-consuming litigation which would never have resulted in an adequate remedy for the Class, and which may have resulted in "shareholders [] receiv[ing] no relief at all." *Sved*, 783 F. Supp. 2d at 861. "Thus, this factor weighs in favor of settlement." *Id*.

### c. The Stage of Proceedings and the Amount of Discovery Completed Weighs in Favor of Settlement

This factor "considers whether the of [sic] amount of discovery completed in the case has permitted counsel to have an adequate appreciation of the merits of the case before negotiating." *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *30 (D.N.J. Mar. 26, 2010). "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014); *Schwartz*

*v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *64-66 (N.D. Tex. Nov. 8, 2005) (same).

Here, Plaintiff's Counsel conducted discovery that enabled them to assess the fairness of the Settlement and the viability of the Released Claims. Specifically, Plaintiff's Counsel reviewed various documents which allowed them to understand Plaintiff's allegations and Defendant's defenses. Plaintiff's Counsel concluded that, in light of the facts garnered during discovery and the applicable law, the Settlement was and is fair. In other words, Plaintiff's Counsel entered into the Settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). This factor therefore also supports approval of the Settlement.

### d.  The Settlement Falls Within the Range of Possible Approval

The Settlement Fund made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for class certification, Defendant's assertion of various legal challenges, a motion for summary judgment, trial as well as appellate review following a final judgment. The Settlement also provides for non-monetary relief in the form of changed practices. There can be no doubt that this Settlement is a fair and reasonable recovery  in light of Defendant's defenses, the uncertainty of class certification, and the challenging

and unpredictable path of litigation Plaintiffs and all Settlement Class members would face absent a settlement.

**e. The Opinion of Plaintiff's Counsel and Settlement Class Members**

It is well settled that the reaction of the Class to the Settlement is perhaps the most significant factor to be weighed in considering its adequacy. *See Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *15 (S.D. Tex. May 7, 2008) ("'If only a small number of objections are received, that fact can be viewed as indicative of the  adequacy of the settlement'") (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 118 (2d. Cir. 2005)).

Pursuant to the Court's Preliminary Approval Order, the Notice was sent by Defendant. After receiving notice of the Settlement, no Settlement Class members objected or opted out. The lack of objection from Settlement Class members weighs heavily in favor of approving the Settlement. *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *29 (approving disclosure-only settlement where there was only five objections).

Further, for the reasons set forth above, Plaintiff's Counsel believes that the Settlement is fair and should be approved. The opinion of experienced counsel should be afforded "great weight," and class counsel's opinion is "entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."

*Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA- 00912-FB, 2016 U.S. Dist. LEXIS 122663, at \*31 (W.D. Tex. May 23, 2016).

## A. <u>The Proposed Notice Plan Satisfies Rule 23 and Due Process</u>

Notice of a proposed settlement must be given to class members in the most practicable manner under the circumstances, describing the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *See* 23(c)(2)(B).

The Notice program satisfied all of these criteria. Agr. § III.B. As recited in the Settlement and above, the Notice Program informed Settlement Class members of the substantive terms of the Settlement. It advised Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for a Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## B. <u>The Proposed Settlement Class Meets the Prerequisites for Class Certification under Rule 23</u>
### a. <u>Numerosity</u>

Rule 23(a)(l) requires that the class be so numerous that joinder of all class members is "impracticable." FED. R. CIV. P. 23(a)(l)." For purposes of

Rule 23(a)(l), "[i]mpracticable does not mean impossible, rather that joinder would be extremely difficult or inconvenient, and depends on the circumstances of the case, not merely t e sheer numbers of putative class members." *In re Seitel, Inc. Sec. Litig.,* 245 F.R.D. 263,269 (S.D. Tex. 2007). Relevant factors include: the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiffs claim. *Zeidman v. J Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. 1981).

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 34,482 unique cell phone numbers (Agr. § I.II), and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

### b. <u>Commonality</u>

The Rule 23(a)(2) requirement is satisfied where, as here, there exist "questions of fact and law which are common to the class." FED. R. Crv. P. 23(a)(2). "The interests and claims of the various plaintiff's need not be identical." *Forbush v. JC. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). Rather, the commonality test is met where there is "'at least one issue, the resolution of which will affect all or a significant number of the putative class members. "*Lightbourn v. County of El Paso,* 118 F.3d 421,426 (5th Cir.1997) (quoting *Stewart v. Winter,* 669 F.2d 328,335 (5th Cir. 1982)). For

this reason, "[t]he threshold of 'commonality' is not high." *Forbush,* 994 F.2d

at 1106 (quoting *Jenkins v. Raymarkindus.,* 782 F.2d 468,472 (5th Cir. 1986)).

A class asserting claims based on "uniform misrepresentations" or a

common course of conduct satisfies the commonality requirement even where the

class members are exposed to different misrepresentations at different times.

*See, e.g., In re Elec. Data Sys. Corp. Sec. Litig.,* 226 F.R.D. 559, 564 (E.D. Tex.

2005) *ajj'd sub nom. Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125 (5th Cir.

2005).

The commonality requirement is easily met here. There are multiple

questions of law and fact – centering on Defendant's prerecorded messages – that

are common to the Settlement Class, that are alleged to have injured all Settlement

Class members in the same way, and that would generate common answers.

### c. **Typicality**

Rule 23(a)(3) requires that the claims or defenses of the representative

parties are typical of the claims or defenses of the class and seeks to ensure

that the interests of the named plaintiff align with those of the class she

purports to represent. FED. R. Crv. P. 23(a)(3). "[T]he test for typicality is

not demanding. It focuses on the similarity between the named plaintiffs'

legal and remedial theories and the theories of those whom they purport to

represent." *James v. City of Dallas, Tex.,* 254 F.3d 551,571 (5th Cir. 2001)

(citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999)). No complete identity of claims is required. "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James,* 254 F.3d at 571.

Typicality is readily established here. Plaintiff is typical of absent Settlement Class members because she received the subject prerecorded message and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

### d. <u>Adequacy</u>

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "To meet the adequacy-of-representation requirement of Rule 23(a)(4), Courts consider (1) whether the named representative shares common interest with other class members, and (2) whether the named representative will vigorously prosecute the interests of the class through the class counsel." *Schwartz v. TXU Corp.,* 2005 WL 3148350, *14 (N.D. Tex., Nov. 8, 2005); *see also, Stoffels v. SBC Communications, Inc.,* 238 F.R.D. 446,454 (W.D. Tex. 2006) (same). Both requirements are satisfied.

Class Counsel is qualified, experienced, and thoroughly familiar with complex class actions. Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement

Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

With respect to the Class Representatives, the "adequacy" requirement asks only whether the representative's interests are comparable to those of the absent class members or conflict with those of the class. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1056 (S.D. Tex. 2012) (citing *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 314 (5th Cir. 2007)). A class representative must "possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625-626 (1997). (internal quotation marks omitted).

In this Action, the Class Representatives' interests are identical to the interests of other Settlement Class Members - maximizing recovery as expeditiously as possible. In addition, their injury is the same as other Settlement Class Members. No conflict of interest exists between Plaintiff and the Settlement Class, let alone a conflict that would present an obstacle to

certification of the proposed class for settlement purposes. Accordingly, the Rule 23(a)(4) requirements are satisfied.

### e. **Common Issues Predominate**

As the United States Supreme Court has explained, "predominance is a test readily met in certain cases alleging consumer fraud...." *Amchem,* 521 U.S. at 625. This is even more true in a settlement-only class action, where the court certifying the class need not examine issues of manageability. *Id.* at 620; *see also, In re Heartland,* 851 F. Supp. 2d at 1059.

To satisfy this requirement, common questions merely need to "predominate" - they do not need to be exclusive or dispositive. As courts in the Fifth Circuit have determined, "the mere existence of individual questions of reliance is not sufficient to warrant a ruling that common questions of law of fact do not predominate." *Ramsey v. Arata,* 406 F. Supp. 435,441 (N.D. Tex. 1975); *Republic Nat. Bank of Dallas v. Denton & Anderson Co.,* 68 F.R.D. 208,215 (N.D. Tex. 1975) ("Predominance of common questions of law or fact under Rule 23(b)(3) is not a numbers game. The true test is whether common or individual questions will be the object of most of the efforts of the litigants and the Court.") "Though there may be several individual questions present, if the basic issue is still common and pervasive, class status is appropriate." *Republic Nat. Bank of Dallas,* 68 F.R.D. at 215; *see also In re Cooper Companies Inc.*

*Sec. Litig.,* 254 F.R.D. 628,640 (C.D. Cal. 2009) (Predominance exists where the class members "have more issues keeping them together than driving them apart.")

Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### f.  <u>A Class Action is the Superior Method</u>

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Lease Oil Antitrust Litig. (No. II),* 186 F.R.D. 403,428  (S.D. Tex. 1999). The superiority inquiry generally considers four factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed.R.Civ.P. 23(b)(3).

However, the United States Supreme Court has stated that, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620 (citation omitted).

The remaining three superiority factors (1, 2 and 3 above) indicate that the class action is the best vehicle for conducting this litigation. Since the cost of complex consumer litigation against a company is extremely high and the individual returns comparatively low, the class action is the most feasible manner of bringing Plaintiff's claims. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem,* 521 U.S. at 617 (internal citation omitted). Here, the Settlement Class consists of over 30,000 members, but the average claim would be relatively small; consequently, the burden and expense of separate litigation would outweigh any recovery. Realistically, a class action presents the *only* way most Settlement Class Members would be able to redress their grievances relating to a defendant's violations of the TCPA. A class action is therefore the superior method to adjudicate this Action.

16

### C. APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $5,000.00. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement.

The Service Award of $5,000 is less than 0.005% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *See,*

*e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).  The Service Award requested here is reasonable.

## D. APPLICATION FOR ATTORNEYS' FEES AND EXPENSES
### a.  The Applicable Legal Standard

Plaintiff's Counsel respectfully request that the Court award them reasonable attorneys' fees of $437,500, which is 25% of the Settlement Fund, and expenses of $40,000.[2] *See* Edelsberg Decl. ¶ 3-4, attached as Exhibit B. Plaintiff's Counsel is entitled to an award of reasonable fees and expenses pursuant to the "common benefit doctrine." Attorney fees awarded under the percentage method are often between 25% and 30% of the fund. *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 U.S. Dist. LEXIS 122663, at *38 (W.D. Tex. May 23, 2016).

In determining the appropriate amount of an award of attorneys' fees, "[D]istrict courts in [the Fifth Circuit] regularly use the percentage method blended with a *Johnson* reasonableness check." *Erica P. John Fund, Inc. v. Halliburton Co.*, Civil Action No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at *32 (N.D. Tex. Apr. 25, 2018). Here, the Court should consider the relevant "*Johnson*" factors set forth by the Fifth Circuit. *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 966

---

[2] Pursuant to the Settlement Agreement, Plaintiff's costs request is capped at $40,000. Plaintiff spent well over $40,000 litigating this matter.

(E.D. Tex. 2000) ("the Fifth Circuit blended the lodestar and *Johnson* analysis into a class action that was not a traditional common-fund class action."). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 965. Plaintiff's Counsel respectfully submit that their request is fair and reasonable in light of the benefits achieved, awards in other similar cases, and other relevant factors.

### b. Plaintiff's Counsel's Lodestar and an Appropriate Multiplier Support the Requested Fee Award

Plaintiff's Counsel expended 384 hours of attorney time in prosecuting the Action. *See* Edelsberg Decl. ¶ 3. The work performed was necessary to protect the rights of the Class and resulted in the Settlement. Applying the regular hourly rates of Plaintiff's Counsel, which, are within the range charged by attorneys in similar actions, results in a total lodestar of $284,900. *In re Dell, Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281, at *39 (W.D. Tex. June 11, 2010) ("[T]he lodestar method [asks the court to] multiply[] the number of reasonable

hours expended by a reasonable hourly rate and apply[] a lodestar multiplier."). Plaintiff's Counsel also incurred over $40,000 in expenses in litigating this Action. *See* Edelsberg Decl. ¶ 4.

Plaintiff's Counsel respectfully submits that, consistent with the *Johnson* factors, a reasonable multiplier of 1.5 is appropriate in this case. "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Schering-Plough/Merck Merger*, 2010 U.S. Dist. LEXIS 29121, at *55.

Here, Plaintiff's Counsel pursued this Action on an entirely contingent basis, obtained the best-possible outcome for the Class and then conducted discovery to confirm the fairness of the Settlement. Additionally, Plaintiff's Counsel's acceptance of this Action necessarily precluded them from devoting resources to other litigation and the prosecution of additional cases. These factors warrant applying a reasonable multiplier of 1.5. *See, e.g., Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *114 (W.D. Tex. Feb. 6, 1996) (suggesting that "a standard risk multiplier of 2 should be used in all contingent fee arrangements."); *In re Schering-Plough/Merck Merger*, 2010 U.S. Dist. LEXIS 29121, at *55-58 (applying multiplier of 2.18 in disclosure-only

settlement and noting that a multiplier of 3 may be awarded even in "a simple case where no risks pertaining to liability or collection were pertinent," and that "the application of a multiplier of 2.18 is not uncommon where the lodestar method is applied.").

### c. Fee Awards in Similar Cases

The requested attorneys' fee award is also fair and reasonable in light of the fees awarded in similar TCPA settlements approved by courts across the country. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (The average percentage award nationwide is roughly one-third). Further, the requested fee and expense award was negotiated by the parties based upon the work performed by Plaintiff's Counsel, the results achieved, and the fee awards in similar cases, and reflects a compromise reached through arm's-length bargaining.

### E. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Order attached as Exhibit C, thereby: (a) finally approving the

Settlement; (b) finally certifying the Settlement Class for settlement purposes; and (c) approving Plaintiff's request for reasonable attorneys' fees and reimbursement of expenses.

Dated: July 13, 2021

**SHAMIS & GENTILE, P.A.**
By: */s/ Andrew Shamis*
Andrew Shamis, Esq.
Florida Bar # 101754
Email:ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. *(pro hac vice)*
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120 Ft. Lauderdale, Florida 33301
Michael Eisenband *(pro hac vice)*
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo *(pro hac vice forthcoming)*
Florida Bar No. 030380
Email: mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713

**IJH LAW**
Ignacio J. Hiraldo *(pro hac vice)*
Florida Bar No. 0056031
14 NE First Ave. 10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709